KATHARYNE S. SMITH

*v.*

EDWARD O. SMITH *et al.*

·*Opinion filed June 18, 1898.*

1. CONFLICT OF LAWS—*lex loci rei sitæ controls distribution of real estate.* The law of the place where real estate is situated governs exclusively with respect to the rights of parties therein and the modes of its transfer or distribution.

2. SAME—*local statutes have no extra-territorial force.* A local statute has no extra-territorial force, and can be executed only upon persons and property within the jurisdiction of the State where such statute is in force.

3. SAME—*foreign law not permitted to govern distribution of real estate in Illinois.* A judgment by a probate court in a foreign State against the estate of a deceased person for a "widow's allowance," being a sum fixed by the court for her temporary support, cannot be collected out of the decedent's real estate situated in Illinois which has descended to heirs.

4. PARTITION—*proceeds of sale are impressed with character of real estate.* The purpose of a sale upon partition by heirs is to distribute the proceeds among them according to their undivided interests, and the proceeds are impressed with the character of real estate for such purpose, and cannot be regarded as personal estate of the deceased, to be turned over to the administrator to pay debts.

5. EXECUTORS AND ADMINISTRATORS—*rights of administrators in principal and ancillary administrations.* The rule that it is the duty of an ancillary administrator to turn over the balance in his hands, after paying all claims in his jurisdiction, to the principal administrator to satisfy unpaid claims in his jurisdiction, applies only to personal property or the proceeds of the sale thereof.

6. RES JUDICATA—*when heirs are not estopped by foreign judgment against estate.* Where a probate court in a foreign State allows a claim against the decedent's estate within that jurisdiction for a "widow's allowance," the fact the heirs opposed the claim in that State does not preclude them from contesting the widow's right to collect such judgment out of the decedent's real estate in Illinois.

*Smith* v. *Smith,* 63 Ill. App. 534, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macon county; the Hon. EDWARD P. VAIL, Judge, presiding.

This is an appeal from an order of the circuit court, refusing to direct payment to the appellant of an amount allowed her for "family allowance" by the superior court of Santa Clara county, California; which order was entered, upon an agreed state of facts, in a partition proceeding, instituted by appellees, as heirs of one Edward O. Smith, against the appellant, widow of said Edward O. Smith and others, upon the application of appellant to have her claim for such allowance paid out of the proceeds of the sale of a part of the property, reported by the commissioners as incapable of division in said proceeding for partition and assignment of dower. An appeal was taken to the Appellate Court from the order refusing payment of appellant's claim. The Appellate Court has affirmed the order of the circuit court, and the present appeal is prosecuted from such judgment of affirmance.

Edward O. Smith died intestate on March 8, 1892, in Santa Clara county, California, where he was then residing. He left him surviving his widow, Katharyne S. Smith, and ten children, to-wit: one daughter, Katharyne J. Smith, his child by appellant, and the appellee, Edward O. Smith and the other appellees his children by a former wife. The appellant, Katharyne S. Smith, was appointed, on April 1, 1892, by said superior court of Santa Clara county, California, administratrix of the estate of said Edward O. Smith, deceased, in California, the said superior court having probate jurisdiction under the laws of California. On May 16, 1892, David S. Shellabarger was appointed administrator of the estate of Edward O. Smith in Illinois by the county court of Macon county, Illinois.

Said Edward O. Smith, at the time of his death, owned land in Illinois, to-wit, 1000 acres of farm land, and a property in the city of Decatur known as the Old Opera House. The appellees, heirs of Edward O. Smith, commenced in the circuit court of said Macon county, Illi-

nois, the proceeding above referred to for the partition of said real estate, and for the assignment of the appellant's dower therein. Such proceedings were had in said partition and dower suit, that 267.62 acres were set off to the appellant as her dower, and most of the lands were divided among the heirs, but, the commissioners having reported that the opera house property in Decatur could not be divided, the same was sold by the master in chancery, who, after paying appellant the amount, allowed her for her dower interest therein as hereafter stated, had in his hands $13,072.73. The appellant, as widow of the deceased intestate, consented to the sale of the said opera house property, and received out of the proceeds of such sale, as the value of her dower, the sum of $5481.36. The appellant also received one-third of the rents of the real estate from the time of the death of said Smith to the time of the assignment of her dower. A receiver, named George W. Bright, was appointed in the proceeding, and has in his hands $320.13 arising from the collection of rents. Shellabarger, the administrator, has in his hands $340.43. The total amount in the hands of the master, the receiver, and the Illinois administrator is $13,733.29. The costs of the administration and receivership in Illinois, and the debts due to the creditors in Illinois have been fully paid. All the moneys on hand have proceeded from the sale and rental of the real estate, owned by said Edward O. Smith in Macon county, Illinois. Claims were presented and allowed against the estate of Smith in the State of California. The assets in California were not sufficient to pay the California creditors.

Upon the agreed statement of facts, hereinafter set forth, the circuit court of Macon county was asked to apply the moneys in the hands of the master and receiver, so far as should be necessary, to the payment of the claims against the estate of the intestate, as allowed by the court in California. A number of these claims have

been paid by the master with the consent of the heirs, but the claim of the appellant for her "family allowance," as heretofore and hereinafter mentioned, was objected to by the heirs.

The agreed statement of facts set forth the death of Edward O. Smith, the appointment of his widow as administratrix in California, the appointment of Shellabarger as administrator in Illinois; and further sets forth, that, under the laws of California, there was set off to the appellant herein as such widow, as and for her homestead in fee simple, certain land in California, valued at $8468.35; that, under and by virtue of the laws of California, there was allowed to the said Katharyne S. Smith by the said superior court of Santa Clara county certain household and kitchen furniture in said homestead, valued at $2992.00; "that, under and by virtue of the laws of California, said superior court of Santa Clara county allowed the said Katharyne S. Smith out of the estate of said deceased, as and for her 'family allowance,' the following sum, to-wit: from the date of the death of said Edward O. Smith on the 8th day of March, 1892, to the 8th day of August, 1892, five months, at $250.00 per month, $1250.00; and from the 8th day of August, 1892, until the further order of said court, at the rate of $200.00 per month; that the same be paid to her out of the estate of said Edward O. Smith, deceased, in preference to all other claims against said estate, except funeral expenses and the expenses of administration;" that said court, on September 8, 1893, ordered that said allowance cease, and that the amount thereof under the orders of said court is $3850.00. The agreed statement of facts further sets forth, that a large number of claims were allowed by the superior court of Santa Clara county, California, against the estate in that State. A list of said claims is attached to the agreed statement of facts. Copies of the orders of said superior court, making the above allowance to the widow, and setting off the homestead to her, are also attached to

said agreed statement of facts; and it is therein agreed, that said copies shall be taken as evidence, that said order, making said allowance, was entered, and that the persons heretofore mentioned are the children and heirs of the deceased. The agreed statement of facts also admits the facts hereinbefore stated, not specifically mentioned as being contained therein. It is also agreed therein, that the administratrix, Katharyne S. Smith, has no funds in her hands to pay the said allowance of $3850.00, made to her by the California court, or to pay the expenses of the administration of said estate in California. It is therein agreed, that the parties plaintiff or defendant may appeal, or prosecute a writ of error, from the order of court made upon such agreed statement of facts.

W. C. JOHNS, for appellant.

BUNN & PARK, and W. C. OUTTEN, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The superior court of Santa Clara county, California, allowed appellant, under the law of that State, $3850.00 "as and for a family allowance out of the estate of her deceased husband, Edward O. Smith." The appellant seeks to have her said claim of $3850.00 paid out of the proceeds of a sale of land in Illinois, made in a partition proceeding between the heirs and widow of the deceased. It is conceded, that the claim, whose payment the appellant here seeks to enforce, has not been allowed in the county court of Macon county, or in any other court in Illinois. The only question in this case is, whether or not the circuit court erred in refusing to allow the appellant's claim of $3850.00 for a "family allowance" to be paid out of the funds, realized from the sale and rental of the Illinois land. This question would appear to have been settled by two recent decisions of this court. One of

said decisions is the case of *McGarvey* v. *Darnall*, 134 Ill. 367. In the latter case we held, that a judgment against an administrator in one State is not competent testimony to show a right of action against either a domiciliary or ancillary administrator in another State, or to affect the assets in such other State. The second decision is the case of *Smith* v. *Goodrich*, 167 Ill. 46, which holds the same doctrine as that announced in *McGarvey* v. *Darnall, supra.* It is not necessary here to repeat the reasoning by which the conclusions announced in the cases thus referred to are supported.

It is, however, claimed by the appellant that the administration in California is the principal administration, and the administration in Illinois is merely ancillary; that personal property is governed in its distribution by the law of the domicile; and that, after domestic creditors are paid, the property should be remitted to the place of the principal administration. Here, the domicile of the deceased, Edward O. Smith, was in Santa Clara county, California. His widow was appointed administratrix in the State of his domicile, and is the principal administratrix. It is, therefore, claimed that so much of the moneys or funds now in the hands of the master and receiver in the partition suit should be paid over to the appellant, representing the principal administration, as may be necessary to pay the claims allowed against the estate in California, including the appellant's claim for a "family allowance."

In *Young* v. *Wittenmyre*, 123 Ill. 303, we held that the administration, granted in the State of a decedent's domicile at the time of his death, is the principal administration, and that granted in another State is but ancillary to the other; and that, when the principal administration of an estate is had in this State, and the ancillary administration in another State, it is the duty of the administrator in such other State to collect all debts due the estate there, and convert all assets within that juris-

diction into money, pay all debts established against the estate there, and, after all such debts are satisfied, to pay the balance to the principal administrator in this State, so that it may be disposed of and distributed under the authority of the county court of this State. But the doctrine thus announced has reference to personalty or money, and to the proceeds of the sale of personalty. In order to make this doctrine applicable to the facts of the present case, it is insisted by the appellant, that, when the sale of the land was made in the partition proceeding, the proceeds of such sale in the hands of the master were thereby converted into and became personalty, and ceased to be real estate. Upon the theory, that these funds are personalty, it is claimed, that they should be paid over to the administratrix appointed in California to be applied upon the claims allowed there. We can not agree with the contention, that the proceeds of the sale of the land made in the partition proceeding were by such sale converted into personalty, so that they can be ordered to be distributed among foreign creditors of the estate, whose claims have not been allowed in Illinois. The real estate sold is located in Illinois. Nothing is better settled than that the law of the place, where real and immovable property is situated, exclusively governs in respect to the rights of the parties, and the modes of transfer and distribution. When the property is real estate, the *lex rei sitæ* controls. (Story on Conflict of Laws, 424; *Wunderle* v. *Wunderle*, 144 Ill. 40; *McCartney* v. *Osburn*, 118 id. 403; 2 Freeman on Judgments, secs. 564, 572). Under the laws of Illinois the administrator has no interest in the land. (*Noe* v. *Moutray*, 170 Ill. 169). The claims against the estate must be proven up in the county or probate court, and, if there is a deficiency of personal assets, then the administrator may apply for a sale of the realty to pay such claims. The allowance of a claim in the probate or county court is, as against the heirs, *prima facie* evidence of its validity.

Counsel refers to some cases in other States than Illinois, where upon a sale by an administrator to pay debts allowed in the State where ancillåry administration is taken out, a surplus remaining from the proceeds of such sale, after the payment of all of such debts, will be remitted to the administrator in the State of the principal administration to be applied upon unpaid claims there. Such a case is that of *Gara* v. *Austin*, 79 Iowa, 178. Whether or not the surplus, arising under such a state of facts, would so far be regarded as personalty as that the ancillary administrator should be authorized to pay it to the principal administrator, is a question which we are not called upon to decide in this case. Here, the fund on hand is not the proceeds of a sale made by the administrator to pay debts, but it is the proceeds of a sale made by the master in chancery of the court for the purpose of distribution among the heirs, and not among the creditors. It follows, that the proceeds of sale now under consideration are affected with the character of real estate.

The doctrine of equitable conversion is applicable, as a general thing, when land is directed by a will or other instrument to be converted into money for a particular purpose, such as the payment of debts. Where land is sold by the order of court for any purpose, the character of the property is changed only so far as may be necessary to accomplish the particular purpose. The conversion of real into personal property, or personal into real property, under a power in a will, takes place only for the purposes for which it is authorized. Where these purposes fail or do not take effect in fact or in law, the property is considered as remaining in its former condition. Where an executor sells real estate of his testator to pay his debts under a power contained in a will, the conversion of the realty into personalty is completed to all intents and purposes only to the extent, to which the purchase money is required for the particular objects, for which the sale takes place; and the excess, though in the

form of money, remains impressed with the character of real estate for the purpose of determining who is entitled to receive it. (3 Pomeroy's Eq. Jur. 1167; *Cronise* v. *Hardt,* 47 Md. 433; 6 Am. & Eng. Ency. of Law, p. 671).

Section 31 of the Illinois Partition act provides, that "the proceeds of the sale shall be divided according to the interests of the parties, as directed by the court." Section 5 of the act provides, that the petition shall describe the premises sought to be divided, and shall set forth the interests of all the parties interested therein, and shall pray for the division and partition of the premises, according to the respective rights of the parties interested therein. Section 5 further provides, that, if a division can not be made, etc., a sale shall be made, and the proceeds divided, according to the respective rights of the parties. Hence, under our statute, in case of a sale in a partition proceeding, the proceeds are to be divided among the parties interested in the land according to their respective interests. When the partition is among the heirs of a deceased ancestor, the purpose of the sale is the distribution of the proceeds among the owners of the undivided interests in the land. Such proceeds, therefore, remain impressed with the character of real estate for the purpose of distribution. It may be, that, in a case where the creditor of one of such heirs is seeking to reach the money derived from such sale, it would be regarded as personalty, but, so far as the ancestor is concerned from whom the heirs inherited the land, the proceeds of such sale cannot be regarded as the personal estate of such ancestor, and, therefore, cannot be paid to his administrator. Indeed, the purpose of the sale is the distribution of the proceeds among the heirs, and not the payment thereof to the administrator for distribution among the creditors. Hence we do not think, that, under the facts of this case, the proceeds of the sale in this proceeding can be regarded as having been converted by the sale from land into money, so as to require the payment of the same to

the administratrix in California. If the appellant had presented her claim to the county court of Macon county, Illinois, and had it allowed there, and then applied for a sale of the land of these appellees for the purpose of having it paid, a different question would be presented. But such question does not here arise.

It is said, however, that the heirs of the deceased Edward O. Smith, who are the appellees here, appeared in the court in California, and opposed appellant's claim there made for a "family allowance." From this fact it is argued that the matter is *res judicata* as to them, and that they are estopped from contesting the claim here. It is true, that the appellees did appear in the California court and there oppose the claim for a "family allowance." But they are not on that account estopped from contesting the claim here. No judgment was entered against them in the California court. The judgment there was only against the estate of the deceased within the jurisdiction of the California court rendering the judgment. By allowing the claim the California court settled the question, that, under the laws of that State, appellant was entitled to the "family allowance." But, here, the question is, whether such allowance shall be paid out of property in Illinois. The matter to be determined here is a new matter, not heretofore passed upon. The question before the circuit court of Macon county was, whether the appellant, under the laws of Illinois, is entitled to such allowance. The statutes of Illinois do not provide for such a "family allowance," as is permitted by the statutes of California. Such a claim against the estate of a decedent is unknown in the courts of Illinois. Moreover, the claim for this allowance was not an existing claim at the death of the intestate. It was made to his widow under the laws of California after his decease. A State has the right to provide for the allowance of such a claim for the benefit of one of its own citizens, and can enforce it out of the property within its own jurisdiction;

but it is not one which can be enforced in another State as to the property there. Such a provision is local in its nature and operation. It has no extra-territorial significance, but must be executed upon persons and property within the jurisdiction of the State, where the law, permitting it, is in force. (*Aspden* v. *Nixon*, 4 How. 467; *DeBrimont* v. *Penniman*, 10 Blatch. 436). What we said in *McGarvey* v. *Darnall, supra,* upon this subject is precisely applicable here. In that case the proceeding was for the partition of land in this State; and one of the defendants by cross-bill set up the allowance of a claim in his favor against the estate of the deceased ancestor in the State of Iowa, the residence of the decedent at his death, and asked to have such judgment paid out of the proceeds of the sale of the land in case of a sale, but made no proof of the justness of the claim, other than the production of the judgment of allowance in Iowa. We there held, that the cross-bill was properly dismissed for want of proof of the claim, and that the judgment of the Iowa court was not evidence against the heirs of the estate, saying in the course of the decision (p. 372): "Moreover, that, in regard to which the Iowa courts had jurisdiction to adjudicate, was the property in that State, and that only; and when they assumed to adjudicate that the demand of appellant was a just charge upon the estate of the deceased, such adjudication had reference solely to the property in that State, and was efficacious in respect to that property only."

It is also to be noted, that the appellant did not pursue the remedy which she had at law. Even if her claim were warranted under our statute, it was necessary for her to first establish it against the administrator in a county court of this State, before the heirs could be called upon to pay it out of their real estate. She can not come into a court of chancery in the first instance, as her claim has not been reduced to judgment. The law is well settled in this State, that a court of equity will

not ordinarily assume jurisdiction of claims against an estate, until the claimant shall have exhibited his claim and had it allowed in the county court, and then, if any special reasons, that may be deemed sufficient, can be assigned why that court cannot afford the requisite relief, equity will assist him, but not otherwise. (*Harris* v. *Douglas*, 64 Ill. 466). As was said in *Smith* v. *Goodrich*, *supra:* "This proceeding seeks to reach the proceeds of real estate. It is in fact a proceeding against the land itself, without a judgment at law, and is a resort to chancery on a simple contract indebtedness. This can not be done where the law provides a remedy."

It is, however, claimed by the appellant, that the appellees have admitted the correctness of her claim by the terms of the agreed statement of facts in this record, and that they are estopped by such admission from questioning the claim. The admission, as contained in the agreed statement of facts, is: "that, under and by virtue of the laws of California, said superior court of Santa Clara county allowed the said Katharyne S. Smith out of the estate of said deceased as and for a family allowance, the following sum," etc. This is not an admission, that the claim is right or just, or that, under the laws of Illinois, such an allowance can properly be made. The admission is only that, under the law of California in a case in that State where the appellees appeared and defended, it was adjudicated that appellant was entitled to the allowance. The admission is of no greater force than would be given to the presentation of a properly authenticated copy of the proceedings of the California court allowing the claim. It can have no greater effect. But the presentation of such an authenticated copy under the decisions of this court would not have made even a *prima facie* case for the appellant. (*McGarvey* v. *Darnall, supra*).

Appellees are entitled to insist, that, under the laws of this State, there is no authority for the collection of this "family allowance" out of the real estate of the de-

cedent in Illinois, which descended to them as heirs. To hold otherwise, would be to allow the law of California, however different from our own, to govern the distribution of real estate here. This is contrary to the well settled rules of law upon this subject.

The judgment of the Appellate Court, and the order of the circuit court disallowing appellant's claim, are affirmed.                                    *Judgment affirmed.*

Mr. JUSTICE BOGGS took no part in the decision of this case.